IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MONDREA VINNING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.08-cv-405 MJR |
| ) | |
| WARDEN HULICK, DR. FIENERMAN, and ) | |
| PAM GRUBMAN. ) | |
| ) | |
| Defendants. | |

**REPORT AND RECOMMENDATIONS**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections prior to filing suit as required under 42 U.S.C. § 1997e.  It is **RECOMMENDED** that the Court **FIND** that Plaintiff did exhaust his administrative remedies as to Defendant Feinerman, that he did not exhaust his administrative remedies as to Defendants Hulick and Grubman, that the Motion to Dismiss filed by Defendants Hulick and Grubman (Doc. 21) be **GRANTED**, that the Motion for Preliminary Injunction (Doc. 11)  be **DENIED,** and that the Court adopt the following findings of fact and conclusions of law:

FINDINGS OF FACT

*Procedural History*

Plaintiff, an inmate in the Menard Correctional Center, has a bullet lodged in his back.  He claims that for most of his time in the custody of the Illinois Department of Corrections, he has been forced to sleep on a steel slab with a very thin mattress, causing severe arthritis and constant back

pain. In his complaint, he claims that Defendants Hulick, Grubman, and Feinerman refused to provide him with proper medical treatment or issue him an extra mattress. On March 11, 2009, the Court issued its threshold order finding that Plaintiff's complaint stated one claim for deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, against Defendants Hulick, Grubman, and Feinerman (Doc. 6). In lieu of an answer, Defendants Hulick and Grubman filed a Motion to Dismiss asserting that the Plaintiff failed to exhaust his administrative remedies prior to filing suit, as required by 42 U.S.C. § 1997e(a) (Doc. 21). In answering the complaint, Defendant Feinerman asserted the affirmative defense of failure to exhaust administrative remedies (Doc. 29).

Based on the Seventh Circuit's opinion in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the undersigned set a hearing on the question of exhaustion for January 13, 2010 (Doc. 32). Prior to the hearing, however, Defendant Feinerman filed a motion to withdraw the affirmative defense that Plaintiff failed to exhaust his administrative remedies (Doc. 41). The undersigned held the hearing on January 13, 2010. The following recommendations are based upon evidence adduced at that hearing.

*Factual Background*

Based upon the documents submitted by Plaintiff with his complaint and with his motion for preliminary injunction (Doc. 11), and upon the documents submitted by Defendants Hulick and Grubman, the Court finds three grievances relevant:

1. Plaintiff filed a grievance (97-1-06) dated January 14, 2006, in which he complained of pain and arthritis from the bullet in his back. He stated that he saw an unnamed doctor several times for the pain and that this doctor confirmed the existence of the bullet in his back and arthritis in his neck. He stated that an unnamed officer gave

him two pillows and two mattresses, which helped his pain, but another officer took them, saying he was not allowed to have them without a permit. None of the defendants are named in the grievance. In investigating the allegations, the grievance officer asked for information from Defendant Grubman and informed Plaintiff that after hearing a response from her, a final disposition on the grievance would be issued (Doc. 22-1, p. 14). The CAO concurred on January 20, 2006. On February 3, 2006, the grievance officer sent a memo to Plaintiff indicating that Defendant Grubman had responded to the allegations and the grievance officer found that the medical issues raised in the grievance were addressed by the health care staff and recommended that the grievance be denied. The Chief Administrative Officer ("CAO") concurred on February 8, 2006 (Doc. 1-1, p. 8). Plaintiff appealed to the Administrative Review Board ("ARB"), but the appeal was returned to him without review because the ARB determined it was submitted outside of the timeframe (Doc. 22-1, Exh. F, p. 15). A note on the return of grievance states: "CAO signed 2/8/06." The ARB received the grievance on March 9, 2006.

2. Plaintiff filed a grievance (157-2-06) on February 10, 2006, complaining of back and neck pain and of the bullet lodged in his back. He stated that medical staff refused to provide him with pain medication. He also stated that he did have two mattresses and two pillows, but they were confiscated because he did not have a permit. He asked for low-gallery and low-bunk permits and permission to have two mattresses and two pillows (Doc. 1-1, p. 13). The grievance officer denied the grievance on March 15, 2006; the CAO concurred on the same day (Doc. 1-1, p. 12). The ARB found that the issue was appropriately addressed by the institution and denied the

-3-

        appeal on June 5, 2006 (Doc. 1-1, p. 14).

3.    Plaintiff filed a grievance (106-9-07) dated September 13, 2007, in which he stated: "I have severe back problems and I have a extensive medical file based on arthritis and this bullet in my back. I have received medication for this and I've been issued a double mattress permit. I've dropped several sick call slips to health care and still have not received treatment." (Doc. 22-1, Exh. C). None of the Defendants are named in the grievance. Attached to the grievance was a letter dated October 6, 2007, to Director Walker. In the letter, Plaintiff states he has "written the warden and the medical director Fienerman complaining" about his back pain and inadequate mattress (Doc. 22-1, Exh. D). The grievance counselor denied the grievance on September 26, 2007; the CAO concurred on September 28, 2007 (Doc. 22-1, Exh. C). On November 28, 2007, the ARB remanded the issue to Warden Hulick for investigation of the allegations (Docs. 11, p. 8; 22-1, p. 6). On February 15, 2008, the ARB sent another letter to Plaintiff finalizing the grievance and finding that Warden Hulick's investigation revealed that Plaintiff's allegations were unable to be substantiated (Doc. 1-1, p. 7; 22-1, Exh. B)

In their motion to dismiss, Defendants Hulick and Grubman argue that the January 14, 2006, grievance was not sufficient to exhaust administrative remedies against them because it was deemed untimely. They argue that the September 13, 2007, grievance was not sufficient to exhaust administrative remedies against them because neither one of them are identified by name. Defendants Hulick and Grubman do not address the February 10, 2006, grievance.

*Hearing*

        At the hearing held on January 13, 2010, the Court granted Defendant Feinerman's motion

to withdraw the affirmative defense that Plaintiff filed to exhaust his administrative remedies. Defendants Hulick and Grubman argued that Plaintiff did not exhaust administrative remedies as to either of them because the January 14, 2006, grievance was untimely, and because they were not identified by name in the September 13, 2007, grievance. Plaintiff argued that he should be excused from having to identify Defendants Hulick and Grubman because when he was writing the grievances, he was not aware of who was responsible for providing (or denying) him medical treatment. He further argued that in addition to the grievances, he wrote letters and submitted sick call slips. He also argued that if his grievances did not comply with the regulations for failure to name individuals, the grievance officer should have denied the grievance on that basis, not on the merits. Finally, he argued that Defendant Grubman was named by the grievance officer.

## CONCLUSIONS OF LAW

Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Illinois Administrative Code sets out the procedure for the filing of grievances by inmates. An inmate must first attempt to resolve the complaint informally. If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. Ill. Admin. Code § 504.810. The grievance officer is required to advise the CAO at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. Ill. Admin. Code § 504.830. An inmate may appeal the decision of the CAO in writing within 30 days. Ill. Admin. Code § 504.850. *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006).

*Defendants Not Properly Named in Grievance*

Under Illinois regulations, a grievance must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." The Code goes on to state, however, that "this provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." Ill. Admin. Code § 504.810(b). The Supreme Court recently held that exhaustion is not inadequate under the PLRA merely because "an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007). The Court emphasized that the level of detail necessary in a grievance for adequate exhaustion should be determined by prison regulations, but that the PLRA does not impose a specific requirement regarding who must be named in a grievance for proper exhaustion. *Id.* at 218-19. The Court opined that notice to an individual that he might be sued "has not been thought to be one of the leading purposes of the exhaustion requirement," and cited the Fifth Circuit's statement that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

Despite the Supreme Court's holding that the PLRA does not necessarily require a prisoner-plaintiff to name each defendant by name in the grievance, the Illinois regulations, which the Supreme Court held control the inquiry, do require that where an individual is not named "the offender must include as much descriptive information about the individual as possible." Plaintiff did not name either Defendant Grubman or Hulick in the three grievances submitted to the Court, nor did he provide any details that would be sufficient to identify them for purposes of exhaustion.

The January 14, 2006, grievance identifies two individuals: an unnamed doctor and an

-6-

unnamed officer. Neither of these unnamed individuals could be Defendant Hulick, an assistant warden, or Pam Grubman, the healthcare unit administrator. Plaintiff included no information that could potentially identify either Hulick or Grubman in this grievance.

The February 10, 2006, grievance stated that "medical staff" had refused to provide him with pain medication. The invocation of medical staff is not sufficient to identify either Defendant Hulick, who is not part of the medical staff at Menard, nor Pam Grubman, who as healthcare unit administrator is not a medical practitioner who dispenses medication.

The September 13, 2007, grievance does not name any individuals at all. Plaintiff states merely that he has back problems and that he has not received treatment for them.

The Court finds that none of these grievance sufficiently named or identified either Defendants Hulick or Grubman. As such, Plaintiff did not exhaust his administrative remedies as to either of these Defendants. Accordingly, the undersigned **RECOMMENDS** that the Court **GRANT** the Motion to Dismiss filed by Defendants Hulick and Grubman.

*Timeliness of Appeal*

At the hearing and in the motion to dismiss, Defendants Hulick and Grubman argued that the January 14, 2006, grievance was insufficient to exhaust for the additional reason that it was found to be untimely by the ARB. Because the Court recommends that Plaintiff did not sufficiently identify either Defendant Hulick or Grubman in the January 14 grievance, a determination of its timeliness or untimeliness is unnecessary.

*Pending Motion for Preliminary Injunction*

On May 14, 2009, the Plaintiff filed a Motion for Preliminary Injunction against the defendants and the Warden of Menard Correctional Center (Doc. 11). In the motion Plaintiff states that he is not receiving proper medical treatment for his back pain. He asks that he be transferred

from Menard Correctional Center immediately. In the alternative, he asks for the following relief: 1) to be given permits for double mattresses, a low bunk, housing in a low gallery, a close cell, and double handcuffing; 2) placement in protective custody; and 3) placement in a one-man cell. At the *Pavey* hearing, the Plaintiff raised the question whether the Court could rule on the issue of a preliminary injunction without a hearing.

To prevail on a motion for preliminary injunction, Plaintiff must also show that he is reasonably likely to succeed on the merits, that no adequate remedy at law exists, and that he will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted, and that the injunction will not harm the public interest. *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004). *See also Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). If Plaintiff meets this initial burden, "then the inquiry becomes a 'sliding scale' analysis where these factors are weighed against one another." *Joelner*, 378 F.3d at 619. Rule 65(d) states that any order made pursuant to the rule must be specific and "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

Plaintiff's motion is also governed by the Prisoner Litigation Reform Act. *See* 18 U.S.C. §3626(a). Under the PLRA, preliminary injunctive relief can be ordered only if the relief is "narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2). "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Boucher v. School Board of the School District of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998) (quoting

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)) (other citations omitted). The burden is upon the plaintiff to show that he is entitled to a preliminary injunction. *Boucher*, 134 F.3d at 823.

Plaintiff first asks the Court to order the immediate transfer of Plaintiff out of the Menard Correctional Center. This request presents a number of problems. Injunctive relief of this nature is not narrowly drawn to correct the harm addressed in this lawsuit as required under the PLRA. Plaintiff's lawsuit is based upon his alleged denial of proper medical treatment for back pain. Transfer to another institution is not the least intrusive means by which to correct that harm. It is also not clear whether the defendants that remain in the action after the Court's threshold review have the authority to transfer Plaintiff to another institution. Neither the Illinois Department of Corrections nor the current warden at Menard Correctional Center are parties to the lawsuit. Regarding Plaintiff's requests in the alternative for placement in protective custody and for placement in a one-man cell, neither are these requests narrowly drawn to correct the harm addressed by the alleged failure of Defendants to provide Plaintiff with medical treatment. Plaintiff's statement that he is in danger at Menard and is deserving of protective custody are unrelated to the issues raised in this lawsuit.

Plaintiff's requests in the alternative for double-mattress, low-bunk, low-gallery, close-cell, and double-handcuff permits are more narrowly drawn to remedy the harm alleged in the lawsuit, but for these requests Plaintiff still cannot meet the requirements for issuance of a preliminary injunction. Plaintiff has not made the required showing that he is likely to succeed on the merits. Plaintiff alleges that he has a bullet lodged in his back and for most of his time in IDOC custody he has slept on a steel slab with only a very thin mattress which has caused him severe arthritis and constant back pain. He alleges that defendants have refused to provide him with proper medical treatment for his pain and have refused to issue him an extra mattress. He submits with his motion for preliminary injunction grievances he submitted in an attempt to get medical treatment. His exhibits do not

include medical records or other documents likely to prove or disprove that Defendants acted with deliberate indifference in providing him medical treatment. In order for Plaintiff to succeed on this claim, he must show that the defendants were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104-105, 97 S.Ct. 285, 291 (1976). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Foelker v. Outagamie County*, 394 F.3d 510, 512-513 (7th Cir. 2005) (quotation marks and citations omitted). In order to prevail on such a claim, the Plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). Plaintiff must show that the defendants' conduct was either intentional or reckless and not merely negligent. *Foelker*, 394 F.3d at 513. Based upon the evidence presented with the motion, Plaintiff has made no such showing and the Court cannot conclude that Plaintiff would succeed on the merits of his claim.

With respect to the other factors outlined in *Joelner*, above, it does appear that Plaintiff has an adequate remedy at law available to him in the form of damages, which he also seeks in his complaint. With respect to the third factor, whether irreparable harm to Plaintiff will outweigh the irreparable harm to the prison, on the surface it does not seem that providing Plaintiff with an extra mattress would be harmful to the prison, but the Court, as always, is wary of intervening in the day-to-day administration of prisons. "Federal judges must always be circumspect in imposing their ideas about civilized and effective prison administration on state prison officials. The Constitution does not speak with precision to the issue of prison conditions (that is an understatement); federal judges know little about the management of prisons; managerial judgments generally are the province of other branches of government than the judicial; and it is unseemly for federal courts to tell a state . . . how

-10-

to run its prison system." *Scarver v. Litscher*, 434 F.3d 972, 976-77 (7th Cir. 2006) (quoting *Duran v. Elrod*, 760 F.2d 756, 759 (7th Cir.1985)). In balancing these interests, this court can only conclude that a preliminary injunction is not warranted in this case.

Regarding Plaintiff's request for a hearing before the Court rules on the motion, under Fed. R. Civ. P. 65, a preliminary injunction must not issue without notice to the opposing party. Fed. R. Civ. P. 65(a)(1). Many courts have construed this portion of the rule to require a hearing so the opposing party has an opportunity to be heard before a preliminary injunction is issued. But, "[i]f the party requesting the injunction cannot show that factual disputes exist regarding the required elements, and cannot introduce evidence sufficient to justify granting the motion, a hearing on the requested injunctive relief is unnecessary." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009).

Here, defendants have been heard regarding the issuance of a preliminary injunction. They oppose such relief and have filed a response outlining their arguments in opposition (Doc. 13). Thus, there is no doubt that defendants have been heard on the question, eliminating the necessity of a hearing to give the defendants the opportunity to raise their arguments. Furthermore, as stated above, Plaintiff has not introduced evidence sufficient to justify granting the motion. For these reasons, the Court does not believe a hearing is necessary before denying the motion.

Accordingly, the undersigned **RECOMMENDS** that the Plaintiff's motion for a preliminary injunction be **DENIED**. The Court **FURTHER RECOMMENDS** that the motion be denied without an evidentiary hearing.

## CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that the Court **FIND** that Plaintiff exhausted his administrative remedies as to Defendant Feinerman, that Plaintiff did not

exhaust his administrative remedies as to Defendants Hulick and Grubman, that the Motion to Dismiss by Defendants Hulick and Grubman (Doc. 21) be **GRANTED**, and that the Plaintiff's Motion for Preliminary Injunction (Doc. 11) be **DENIED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have fourteen (14) days after the service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED:  January 20, 2010**

s/ *Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**