IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MONDREA VINNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-cv-0405-MJR |
| | ) | |
| DONALD HULICK, | ) | |
| ADRIAN D. FEINERMAN, | ) | |
| and PAM GRUBMAN, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

A.    Introduction and Overview of Claims

In this suit based on 42 U.S.C. § 1983, Mondrea Vinning – an inmate at Menard Correctional Center in the custody of the Illinois Department of Corrections (IDOC) – asserts that correctional officials at Menard were deliberately indifferent to his serious medical needs, thereby violating the Eighth Amendment to the United States Constitution.  More specifically, Vinning has a bullet lodged in his back and claims that Defendants refused to provide him with proper medical treatment and refused to issue him an extra mattress to place atop his single thin mattress to help ease his back discomfort.

The three Defendants who survived threshold review of Vinning's lawsuit are Donald Hulick (former Warden of Menard), Adrian Feinerman (a medical doctor who worked at Menard on a contract basis with the IDOC), and Pam Grubman (a registered nurse and the Health Care Unit Administrator of

Menard from April 1991 to March 2006).

Via motion to dismiss filed by Hulick and Grubman in June 2009 and affirmative defense lodged by Feinerman in November 2009 (Docs. 21 & 29), Defendants asserted that Vinning failed to exhaust his administrative remedies prior to filing suit, as required by 42 U.S.C. § 1997e.  To investigate the issue of exhaustion, the Honorable Donald G. Wilkerson, the Magistrate Judge assigned to this case, held a hearing in compliance with **Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)**, on January 13, 2010.

At the *Pavey* hearing, Judge Wilkerson granted a motion by Defendant Feinerman (Doc. 41) to withdraw his affirmative defense regarding exhaustion.  The hearing proceeded, with evidence and argument presented by Defendants Hulick and Grubman (along with Plaintiff Vinning), regarding the various grievances filed, the issues raised therein, and the steps taken to advance the grievances through the IDOC administrative system.

Vinning also moved for a preliminary injunction (Doc. 11), alleging that he had "developed a very severe case of arthritis, and his back, neck and shoulders are in constant pain," that he submitted "countless sick call slips" and wrote the IDOC Director, the current warden of Menard, and the previous warden of Menard about his back pain, that Menard personnel refuse to issue him a double mattress permit to alleviate his pain (despite the fact that he was given just such a permit while incarcerated in a Mt. Sterling prison), and that

the back pain essentially renders him defenseless against fellow inmates at Menard.

In the preliminary injunction motion, Vinning sought an immediate transfer from Menard Correctional Center, placement in protective custody, or an order (presumably directing the IDOC or Menard officials) to issue Vinning a double mattress permit, a low bunk permit, a low gallery permit, a "close cell permit," and a "2-handcuff permit" (*id.*, p. 4).

Defendants Hulick and Grubman responded to the motion and tendered a supporting affidavit.  They maintained that Plaintiff had shown no constitutional violation, had established no right to be placed in protective custody or a one-man cell because of the back pain, had demonstrated no entitlement to the relief sought, and had not satisfied the requirements for issuance of a preliminary injunction.

By Report issued January 20, 2010 (Doc. 44), Magistrate Judge Wilkerson recommends that the undersigned District Judge deny Vinning's motion for preliminary injunction and grant Defendants' dismissal motion. Vinning objected to the Report and Recommendation (R&R) on January 27, 2010 (Doc. 46), Feinerman responded to those objections on February 2, 2010 (Doc. 47), Grubman and Hulick responded on February 8, 2010 (Doc. 49), and Vinning replied on February 16, 2010 (Doc. 50).

Timely objections having been filed, the undersigned Judge

undertakes de novo review of the portions of the R&R to which specific written objection was made.  **28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3); Southern District of Illinois Local Rule 73.1(b).**  The Court may accept, reject or modify the recommended decision, receive further evidence, or return the matter to the Magistrate Judge with instructions.  **Fed. R. Civ. P. 72(b)(3); Local Rule 73.1(b**).  With the issues thoroughly addressed and the motions fully ripe, the Court now resolves the motions and R&R, beginning with reference to the standards governing the undersigned Judge's review.

        B.    <u>Analysis</u>

In ***Estelle v. Gamble*, 429 U.S. 97 (1976)**, the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty upon states to provide adequate medical care to inmates.  Failure to provide medical care violates the Eighth Amendment when there is "deliberate indifference" to a substantial risk of harm.  ***Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000).**

Deliberate indifference is "more than ordinary lack of due care for the prisoner's interests or safety."  ***Whitley v. Albers*, 475 U.S. 312, 319 (1986).**  Instead, the plaintiff must establish that: (1) his medical condition was objectively serious, and (2) the defendants were subjectively aware of the medical need and disregarded an excessive risk to the inmate's health.  ***Wynn***

*v. Southward*, **251 F.3d 588, 593 (7th Cir. 2001).**

The United States Court of Appeals for the Seventh Circuit has explained it this way.  States have an affirmative duty to provide medical care to their inmates. The upshot of this duty is that deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain, which violates the Eighth Amendment. To demonstrate deliberate indifference, a plaintiff must demonstrate an objectively serious medical condition to which a state official was deliberately, i.e., *subjectively*, indifferent.  ***Duckworth v. Ahmad*, 532 F.3d 675, 678-79 (7th Cir. 2008). *See also Greeno v.  Daly,* 414 F.3d 645, 652-53 (7th Cir. 2005).**  Delays in treating painful non-life-threatening conditions *can* support Eighth Amendment claims, too.  ***Johnson v. Doughty*, 433 F.3d 1001, 1017(7th Cir. 2006), *quoting Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).**  But, as is explained further below, this Court cannot reach the merits of an inmate's deliberate indifference claim unless it first determines that the inmate exhausted all available administrative remedies.

The Prison Litigation Reform Act of 1995 (PLRA) requires prisoners to exhaust administrative remedies before filing suit in federal court.  That requirement applies to all suits challenging prison conditions under 42 U.S.C. § 1983, as well as actions under "any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility." **42 U.S.C. § 1997e(a).**

Exhaustion of administrative remedies under the PLRA is a condition precedent to suit in federal court. ***Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002).** The law of this Circuit establishes that the inmate must comply with the rules and procedures governing grievances in the particular institution of incarceration, including any time limitations and *all steps* in a multi-step grievance process.

To properly exhaust remedies within the meaning of the PLRA, the inmate "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." ***Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). *See also Burrell v. Powers*, 431 F.3d 282, 284 (7th Cir. 2005).** If administrative remedies are *not* properly exhausted prior to commencement of the federal lawsuit, the district court must dismiss the suit (or any claims not fully exhausted). ***Burrell*, 431 F.3d at 285; *Jones v. Bock*, 549 U.S. 199, 201 (2007).**[1]

Because exhaustion is an affirmative defense, "the burden of proof is on the prison officials." ***Kaba v. Stepp*, 458 F.3d 678, 680 (7th Cir.**

---

[1]    Dismissal is without prejudice to initiating another action, if appropriate, after all remedies have been exhausted. ***Burrell*, 431 F.3d at 285, *citing Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice ...."), and *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("all dismissals under § 1997e(a) should be without prejudice"). *Accord Barnes v. Briley*, 420 F.3d 673, 676 (7th Cir. 2005).**

**2006).**  So here, Defendants bear the burden of demonstrating that Vinning failed to exhaust all available administrative remedies before he filed this suit. ***Kaba*, 458 F.3d at 681, *citing Dole v. Chandler*, 438 F.3d 804, 809 (7ᵗʰ Cir. 2006).**

The IDOC's three-step administrative process for resolving inmate grievances is delineated in 20 Ill. Admin. Code Section 504.810 (West 2008). At *step one*, the inmate presents his complaint to a correctional counselor.  If that fails to resolve the problem, *step two* entails the inmate submitting a written grievance on a designated form to the facility's Grievance Officer, within a specific period (usually the grievance must be filed within 60 days after the inmate discovers the problem about which he complains).  After investigating, the Grievance Officer forwards his conclusions to the Chief Administrative Officer (CAO).  The CAO's decision is furnished to the inmate.

If the inmate still is unsatisfied, *step three* is an appeal in writing to the Director of the IDOC.  The inmate submits the Grievance Officer's report and the CAO's decision to the Administrative Review Board (ARB).  The ARB examines the documents, determines whether a hearing is needed, may interview the inmate, and may call witnesses.  Ultimately, the ARB submits a written report of its findings to the Director of the IDOC who makes the final decision on the grievance.  Copies of the ARB's report and the Director's final decision are sent to the inmate.

In the case at bar, Vinning filed three grievances.   The R&R describes them in detail, along with a thorough recitation of the steps taken on each of these grievances (Doc. 44, pp. 2-4). The Court need not repeat the descriptions here at length.   For ease of discussion, the undersigned Judge labels Vinning's relevant grievances as Grievances 1 through 3, the key details of which are as follows.

Grievance 1: A January 14, 2006 grievance complained of pain and arthritis from the bullet in his back and noted that an officer took away the extra pillows and mattresses Vinning had briefly been allowed.   But this grievance did not name any of the three Defendants herein.   And although the grievance was appealed by Vinning to the ARB, the ARB determined the grievance was submitted outside the required time period.

Grievance 2: A February 10, 2006 grievance referenced back and neck pain from the bullet in Vinning's back, stated that medical staff refused to give him pain medicine, and complained that his extra pillows and mattresses were confiscated because Vinning lacked a permit.  Vinning appealed the denial of this grievance up to the ARB, but the ARB ruled against Vinning on appeal on June 5, 2006.

Grievance 3: A September 13, 2007 grievance complained of severe back problems from arthritis and the bullet in Vinning's back.  It also repeated the complaint that Vinning had not received proper treatment for his back pain.

None of the three Defendants named in this lawsuit was named in that grievance.  Denied relief at the grievance counselor level and the CAO level, Vinning appealed to the ARB who remanded the matter to Warden Hulick for investigation.  On February 15, 2008, the ARB sent Vinning a letter advising him that Warden Hulick's investigation determined Vinning's allegations could not be substantiated.

Magistrate Judge Wilkerson's R&R correctly points out that although the PLRA does not necessarily require an inmate to name each Defendant *by name* in his grievance, controlling Illinois regulations require that if the inmate cannot name the official involved, he "must include as much descriptive information about the individual as possible."  Doc. 44, p. 6, ***citing Jones,* 549 U.S. at 218-19, and *quoting* Ill. Admin. Code § 504.810(b).**

Judge Wilkerson concluded the following as to each of Vinning's three grievances.

- Grievance 1 identified two individuals (an unnamed doctor and an unnamed correctional officer) neither of which could be Hulick (an assistant warden) or Grubman (the healthcare unit administrator).  Because he found that this grievance did not identify either Hulick or Grubman, Judge Wilkerson did not reach the issue (also argued by Defendants) that Grievance 1 was untimely.

- Grievance 2 referred to certain "medical staff" who refused

to administer pain medication, but this invocation was not sufficiently detailed to identify Hulick (not part of the medical staff at all) or Grubman (not a medical practitioner who dispenses medication).

- Grievance 3 did not name any individuals at all, simply complaining that Vinning has not received treatment for his back problems.

Based on the finding that none of the grievances sufficiently identified Hulick and Grubman, Judge Wilkerson recommended granting Defendants' exhaustion-based dismissal motion.  Vinning timely objected.

Vinning objects generally to this Court scrutinizing whether he exhausted prior to filing suit: "The court is attempting to determine something that department officials did not even determine" (Doc. 46, p. 2).  Vinning further objects that he identified the Defendants well enough that his grievances made it all the way up the IDOC chain to the ARB, and that "I have never met Warden Hulick ..., so why would I name him in my grievance?" (Doc. 46, p. 3).

Having carefully reviewed Vinning's objections as well as the responses and replies thereto, the undersigned Judge finds the objections wholly devoid of merit.   Supreme Court and Seventh Circuit law plainly make it this Court's task to dig into and decide the question of whether Vinning exhausted all available administrative remedies before he filed this suit. Exhaustion must be completed in the mode and manner required by the

prison's rules and applicable regulations.  Vinning filed and appealed multiple grievances, and they were processed within the prison's system, but it is the province of this court (not the CAO or the ARB or the IDOC) to say whether exhaustion complied with federal legal requirements.

As to Vinning's comment that he never even met Warden Hulick and thus had no reason to mention Hulick in a grievance, the Court clarifies. Vinning did not have to name Warden Hulick in any grievance.  But if he wants to sue Hulick under § 1983 in this Court, he had to *first* name Hulick in a grievance (or identify him well enough that it can be determined that – before filing this lawsuit – Vinning complained about some action or inaction of Hulick).

For all these reasons, the Court overrules Vinning's objections and finds that Defendants Hulick and Grubman must be dismissed based on Vinning's failure to exhaust.  However, Vinning's claims against Defendant Feinerman remain.  Feinerman withdrew his affirmative defense of exhaustion, and the Court therefore concludes that Vinning *did* exhaust his administrative remedies as to Defendant Feinerman.

Which leaves Vinning's motion for preliminary injunction. To prevail on a motion for preliminary injunction, the moving party must demonstrate (1) a likelihood of success on the merits, (2) a lack of an adequate remedy at law, and (3) an irreparable harm that will result if the injunction is not granted. *Lambert v. Buss*, **498 F.3d 446, 451 (7th Cir. 2007).**  If the movant satisfies

the first three showings, then the district court balances the "relative harms

that could be caused to either party," if the injunction is granted or not granted.

***Id., citing Incredible Tech., Inc. v. Virtual Tech, Inc.*, 400 F.3d 1007,**

**1011 (7th Cir. 2005)**.

       In a 2008 per curiam opinion, the Seventh Circuit articulated the

movant's threshold showing slightly differently (then culminating in the same

balance-of-harms analysis which the court turns to only if the movant *met* his

burden on the threshold showing):

> A party seeking a preliminary injunction must
> demonstrate that he is reasonably likely to succeed on
> the merits, that he is experiencing irreparable harm
> that exceeds any harm his opponent will suffer if the
> injunction issues, that he lacks an adequate remedy at
> law, and that the injunction would not harm the public
> interest.

***Coronado v. Valleyview Public School District 365-U*, 537 F.3d 791, 794-**

**95 (7th Cir. 2008).**

       One additional principle guides the Court's analysis in a the specific

context of a prisoner's motion for preliminary injunction.  A section of the PLRA

entitled "Requirements for Relief," provides:

> Preliminary injunctive relief must be narrowly drawn,
> extend no further than necessary to correct the harm
> the court finds requires preliminary relief, and be the
> least intrusive means necessary to correct that harm.
> The court shall give substantial weight to any adverse
> impact on public safety or the operation of a criminal
> justice system caused by the preliminary relief....

**18 U.S.C. § 3626(a)(2).**

In the case at bar, Judge Wilkerson methodically addressed each form of relief sought by Plaintiff Vinning and articulated the reasons preliminary injunctive relief was not warranted.  For instance, as to Vinning's request to be immediately transferred out of Menard Correctional Center, Judge Wilkerson concluded that relief of this nature was not narrowly drawn to correct the alleged harm, as required by the PLRA.  Nor was the request for protective custody or a one-man cell narrowly drawn to correct Defendants' alleged failure to provide medical treatment.

As to Vinning's requests for the various permits (for a low bunk, for a low gallery, etc.), Judge Wilkerson found that these requests *were* more narrowly drawn but that Vinning had failed to make the necessary showing for issuance of a preliminary injunction.  For example, Vinning had not shown a likelihood of success on the merits of his claims.  His motion and supporting documentation did not include medical records likely to prove that the named Defendants acted with deliberate indifference toward serious medical needs.

Objecting to the R&R, Vinning insists that (a) he is likely to prevail on the merits, and (b) Magistrate Judge Wilkerson's failure to hold an evidentiary hearing on the motion renders his recommendations meaningless. The Court rejects both these objections.

There is no requirement that the Court hold a hearing on a motion

for preliminary injunction – in a prisoner case or otherwise.  Vinning cites no case, rule or statute mandating a hearing, and Federal Rule of Civil Procedure 65(a) does not impose any such requirement.  There are cases in which the appellate court held that the district court abused its discretion by declining to conduct a hearing, but those cases provide that a hearing is required where the district court has to *decide credibility issues.*  **See, e.g., Medeco Security Locks, Inc. v. Swiderek**, **680 F.2d 37, 38 (7th Cir. 1982).**  Those cases are inapposite and do not support Vinning's objection.  The parties were given an opportunity to brief the motion fully, and they did so.

Moreover, Vinning clearly failed to meet his burden on the threshold showing for issuance of a preliminary injunction.  Even assuming *arguendo* that Vinning had shown that he was suffering irreparable harm (a tall order), he has not demonstrated (and the ample record before the Court does not reveal) that he has a reasonable likelihood of success on the merits.  Plus he has an adequate remedy at law available to him (monetary damages) for nearly everything  alleged in his motion and complaint.  So he did not sustain his burden for issuance of a preliminary injunction.

Furthermore, the undersigned Judge's review of the matter indicates that no named Defendant in this lawsuit has the power to issue the relief requested in the motion (granting the various permits, transferring Vinning to a different correctional facility, etc.).  Neither the IDOC nor the

current Menard warden is a named Defendant herein.  A former warden (Hulick) and a former healthcare administrator (Grubman) cannot demand that Vinning be reassigned to a different facility or even a different gallery within Menard. And Defendant Feinerman is no longer employed at Menard Correctional Center at all.  So he cannot be enjoined from acts he lacks authority to do, much less ordered to make changes in living conditions over which he has no control.

One last point bears note. According to Vinning's own objections, he has been afforded some of the relief requested in his motion for preliminary injunction.  The objections note: "Currently Plaintiff is in a one man cell and is not around any known enemies thus alleviating the need for protective custody at this time, … so Plaintiff merely requests to remain in a one man cell but be moved closer to the front of the gallery so he does not have to run to catch his cell [door]" quickly when returning from meals (Doc. 46, pp. 5-6; Doc. 11, p. 2).  The Court doubts that this sort of request (for better cell location) falls within the scope of a motion for preliminary injunction.  Even if injunctive relief covers Vinning's requests, he has failed to prove the elements needed for the issuance of a preliminary injunction.

C.    <u>Conclusion</u>

Accordingly, the Court **ADOPTS** in its entirety Magistrate Judge Wilkerson's R&R (Doc. 44), **DENIES** Vinning's motion for preliminary injunction (Doc. 11), and **GRANTS** Defendants Hulick and Grubman's dismissal motion

(Doc. 21).  Hulick and Grubman are hereby **DISMISSED** without prejudice, based on Vinning's failure to exhaust administrative remedies prior to filing suit against them.

The Court has found that Vinning *did* exhaust administrative remedies as to Defendant Feinerman, so Vinning's claims against Feinerman remain.  **The parties shall caption all future pleadings as Mondrea Vinning, Plaintiff, vs. Adrian Feinerman, Defendant.**

All parties' pleadings, including those filed by Feinerman's own counsel (and possibly prior Orders of this Court), have spelled Dr. Feinerman's last name with both "ei" and "ie" combinations (see, e.g., p. 1 of Doc. 47).  The undersigned Judge believes the correct spelling is F**ei**nerman.  The Clerk's Office shall correct the docket sheet so that this Defendant is listed as "Adrian D. Feinerman" instead of "Dr. Fienerman," but defense counsel may correct this (if inaccurate) by calling Judge Reagan's law clerk at 618-482-9229.

Finally, the undersigned District Judge **NOTIFIES** the parties that if any claims survive dispositive motions, they will be set for trial before the undersigned District Judge on <u>January 10, 2011</u> via a firm trial setting.

IT IS SO ORDERED.

DATED March 31, 2010.

s/ Michael J. Reagan
Michael J. Reagan
United States District Judge