IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MONDREA VINNING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:08-cv-0405-MJR-SCW |
| | ) |
| ADRIAN FEINERMAN, | ) |
| | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to District Judge Michael J. Reagan pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

## BACKGROUND

Plaintiff Mondrea Vinning ("Vinning"), an inmate housed at the Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983, for alleged deprivations of his constitutional rights. Vinning filed his civil rights Complaint on June 4, 2008, against eight Defendants, alleging five separate counts (Doc. 1). Because none of Vinning's five claims were in any way related to each other, during his initial review of Vinning's Complaint pursuant to 28 U.S.C. § 1915A, District Judge Michael J. Reagan dismissed *without prejudice* Counts 2-5 (Doc. 6, p. 2). In that same Order, Judge Reagan also dismissed from this action Defendants Walker, Menard Business Officer, Ashby, Jennings and Ford, *with prejudice* (Doc. 6, pp. 3-4). Pursuant to 28 U.S.C. §§636(b)(1)(B), FEDERAL RULE OF CIVIL PROCEDURE 72(b), and SOUTHERN DISTRICT OF ILLINOIS LOCAL RULE 72.1(a), Judge Reagan then referred this action to the assigned Magistrate Judge for further pretrial proceedings.

On March 31, 2010, Judge Reagan adopted the Report and Recommendation of Magistrate Judge Wilkerson finding that Vinning had not exhausted his administrative remedies as to Defendants Hulick and Grubman (Doc. 51). As such, Judge Reagan dismissed these two Defendants *without* prejudice. This left only Vinning's deliberate indifference claim against only Defendant Adrian D. Feinerman ("Dr. Feinerman"). Specifically, Vinning alleges that Dr. Feinerman violated his Eighth Amendment right to be free of "cruel and unusual punishments" by demonstrating deliberate indifference to his painful arthritic condition; in part, for not authorizing an extra mattress or a double handcuff permit.

Now before the Court for a Report and Recommendation is Dr. Feinerman's Motion for Summary Judgment (Doc. 85). In his motion, Dr. Feinerman argues that he is entitled to summary judgment because: (1) physicians are entitled to exercise their professional judgment, as he did here when he determined that the course of treatment requested by Vinning was not medically necessary; (2) at least two other district courts have granted judgment in favor of defendant doctors who declined to provide a second mattress requested by an inmate; and (3) "there is no evidence that [he] was aware of yet disregarded an excessive risk to the Plaintiff's health" (Doc. 85, p. 2). In the alternative, Dr. Feinerman argues that he is entitled to qualified immunity because other courts have upheld the denial of an inmate's request for two mattresses, and that Vinning's claims from 2006 and earlier are barred by the applicable two-year statute of limitations (*Id.*). Vinning responds that as the supervisor of medical care at Menard, Dr. Feinerman was aware of his numerous requests for a second mattress and that "Dr. Feinerman [was] aware of treatment that can help arthritis but never prescribed [him] any" (Doc. 87, p. 2). The Motion for Summary Judgment has been fully briefed, the entire record has been thoroughly reviewed, and the Court now makes its recommendation as follows.

# FINDINGS OF FACT

On summary judgment, the Court considers the facts in a light most favorable to the non-moving party (here, Vinning) and adopts reasonable inferences and resolves doubts in favor of that party. *Nat'l Athletic Sportswear, Inc., v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008). The parties agree that in 1992, when Vinning was eighteen, he was shot in the neck and the bullet has remained lodged inside of his back ever since (Doc. 85-1, Plaintiff's Deposition Transcript, pp. 55-56, 67). Vinning entered the Illinois Department of Corrections ("IDOC") in 1999 (*Id.* at 70). Between the time he recovered from the gunshot wound in 1992, and the time he entered the IDOC in August 1999, Vinning did not have any complaints of pain in his back, shoulder or neck (*Id.*).

According to his IDOC medical records, however, as early as September 17, 1999, Vinning was evaluated for complaints of throbbing neck and back pain (*Id.* at 76).[1] Thereafter, until the filing of this lawsuit in June 2008, Vinning was evaluated for back pain over 16 times, by at least 10 different doctors or nurse practitioners, in at least five different IDOC facilities (*Id.* at 76-93). Dr. Feinerman evaluated Vinning on March 13, 2001; October 23, 2007, August 22, 2008, and April 16, 2009 (*Id.* at 81, 91-94). For purposes of this action, however, only the October 23, 2007 evaluation by Dr. Feinerman falls within the relevant time period (i.e., the two-year period prior to when Vinning filed his Complaint on June 4, 2008).[2] During this timeframe, in addition to being seen once by Dr. Feinerman, Vinning was evaluated on four other occasions as follows: (1) on February

---

[1] The Court notes that neither party has submitted a single medical record in support of or in opposition to the instant motion. As such, for specific medical evidence, the Court is relying primarily on the copy of Vinning's Deposition in which Defense Counsel thoroughly reviewed Vinning's medical records with him (*see* Doc. 85-1).

[2] In Illinois, section 1983 actions such as this one are subject to a two-year limitations period. *Jenkings v. Village of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007). "Federal courts using state limitations periods [also] apply the state's 'coordinate tolling rules' as well." *Id.* (Quoting *Hardin v. Straub*, 490 U.S. 536, 539 (1989)). Accordingly, under Illinois law, it is Vinning's burden to prove that facts exist that would toll the statute of limitations. *Follis v. Watkins*, 855 N.E. 2d 579, 588 (Ill. App. Ct. 2006). Here, Vinning has not even attempted to argue that such facts exist. Accordingly, the Court finds that only the two-year period prior to Vinning filing his Complaint on June 4, 2008, is relevant for properly resolving the instant motion.

26, 2007 by Doctor Brown at Western Correctional Center; (2) on September 16, 2007 by a medical technician at Menard; (3) on September 24, 2007 by Nurse Practitioner Pollion at Menard; and (4) on October 18, 2007, by Dr. Magdel at Menard (*Id.* at 85-91). During each of the relevant evaluations, Vinning complained of back pain and he requested a double mattress from each of the doctors and the nurse practitioner (*Id.*). Only Dr. Brown at Western Correctional Center prescribed a double mattress for Vinning for a period of six months (*Id.* at 87). No other Doctor had prescribed a double mattress for Vinning (*Id.* at 95). During the relevant time period, Vinning was transferred over ten times between a total of five correctional facilities (*Id.* at 85-93).

Finally, Vinning also alleges that Dr. Feinerman either revoked or denied him a double handcuff permit, but this occurred at an evaluation on April 16, 2009—well after Vinning filed his Complaint (*Id.* at 16). As such, this allegation will be ignored. *See Chicago Regional Council of Carpenters v. Village of Schaumburg*, No. 10-1867, 2011 WL 1632046, at *2 (7th Cir. May 2, 2011) (District Court was correct to ignore events that occurred after the filing of the complaint because "[n]ormally, a complaint can seek relief only for events that have already occurred.... Before the complaint may be broadened to encompass subsequent events, the plaintiff must move to supplement it.").

## LEGAL STANDARDS

### Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 563 (7th Cir. 2009) (quoting FED. R. CIV. P. 56(c) (2009)).[3] The party

---

[3] On December 1, 2010, Rule 56 underwent a major revision. While it is too early to know the full implications of this revision, according to the Summary of the Report of the Judicial Conference Committee on Rules of Practice and Procedure at 14 (Sept. 2009), the "amendments are not intended to change the summary-judgment standard or burdens." (available at: http://www.uscourts.gov/uscourts/RulesAnd

seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, after "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2) (1986)). "A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted). In other words, for the nonmoving party, summary judgment "is the 'put up or shut up' moment in a lawsuit." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)).

In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting FED. R. CIV. P. 56(c) (2007)). At summary judgment, the "court's role is not to evaluate the weight of the evidence, judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380 (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

---

Policies/rules/Reports/Combined_ST_Report_Sept_2009.pdf last visited, May 23, 2011). As such, the Court has cited to the former Rule 56, the substance of which remains viable.

***Deliberate Indifference***

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). In order prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and secondly, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotations omitted); *see also*, *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007). With respect to the objective component of this inquiry, "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005).

To establish deliberate indifference, a prisoner also must show that, subjectively, "prison officials acted with a sufficiently culpable state of mind" *Greeno*, 414 F.3d 645 at 653 (citations and quotation omitted). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-653 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness," as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, a plaintiff must demonstrate that a prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; that the official actually drew the inference, and then disregarded this risk. *Greeno*, 414 F.3d at 653 (internal quotations omitted). While a series of negligent acts can evince a prison official's awareness of an inmate's exposure to a serious risk, "showing deliberate indifference through a

pattern of neglect entails a heavy burden." *Zentmyer v. Kendall County*, 220 F.3d 805, 811 (7th Cir. 2000) (quoting *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir.1999)).

Inmates are not entitled to demand specific treatment or even "to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [an inmate] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). Moreover, "[m]ere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *See also Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir.1996). At bottom, demonstrating deliberate indifference requires inmates to clear a high threshold. *Dunigan ex rel. Nyman*, 165 F.3d at 590.

## **CONCLUSIONS OF LAW**

Although Vinning attempts to broaden his allegations against Dr. Feinerman his claim boils down to this: Vinning suffers from arthritis and degenerative joint disease—two medical diagnoses of which Dr. Feinerman was aware (Doc. 85-1, Plaintiff's Deposition Transcript, pp. 91, 92)—and as a result, he experiences constant back pain for which he claims Dr. Feinerman has refused to provide him with proper medical treatment; including issuing him a double mattress.[4] Because inmates at Menard are forced to sleep on a steel slab with a very thin mattress Vinning's medical conditions were aggravated. Vinning alleges that the times when he had one good mattress or two mattresses his health was vastly improved (*Id.* at 97). As such, Dr. Feinerman's refusal to provide him with a mattress constitutes deliberate indifference to his serious medical needs.

In light of the foregoing, here, "the complete question is whether, when viewing the record in the light most favorable to [Vinning], a reasonable trier of fact *could* conclude that [Dr. Feinerman]

---

[4] Vinning was not basing his requests for a double mattress on the bullet in his back (Id. at 49). Rather, Vinning's requests were based on the pain that he consistently experienced from arthritis and degenerative joint disease

was subjectively aware of [Vinnings's] serious medical condition and either knowingly or recklessly disregarded it." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (emphasis in original). Dr. Feinerman challenges both prongs required to demonstrate deliberate indifference; that is, whether, objectively, Vinning's condition was sufficiently serious as to mandate treatment, and whether, subjectively, he deliberately ignored a substantial risk of serious harm to Vinning.

In support of his deliberate indifference claim, Vinning offers his inevitably, "self-serving" affidavit (Doc. 87, p. 11). The Seventh Circuit Court of Appeals has made abundantly clear that "a nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion." *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003) (collecting cases); *see also*, *Berry v. Chicago Transit Authority*, 618 F.3d 688, 691 (7th Cir. 2010) ("[W]e long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'"). However, an affidavit will fail to thwart summary judgment if it is not based on personal knowledge or "'reasonable inferences that are 'grounded in observation or other first-hand personal experience.'" *Id.* at 772 (quoting *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc)). Finally, as always, "mere conclusory allegations do not constitute evidence." *Montgomery v. American Airlines*, Inc., 626 F.3d 382, 389 (7th Cir. 2010).

The Court recommends initially that it should be assumed, without deciding, that Vinning's medical conditions are objectively "sufficiently serious." While this is disputed by Dr. Feinerman, the issue is not dispositive of this motion because the Court finds that Vinning has failed to demonstrate that Dr. Feinerman deliberately disregarded a known risk of serious injury to Vinning. To the contrary, the evidence demonstrates that, during the period relevant to this lawsuit, either Dr. Feinerman or his medical staff provided Vinning with adequate care.

There are a number of problems with Vinning's claims and his affidavit. First, both his claims and his supporting affidavit are often times contradicted by Vinning's own deposition

testimony, and by his brief in response to the Motion for Summary Judgment. For example, Vinning claims that he was "provided with no treatment at all by Dr. Feinerman" (Doc. 87, p. 11). Perhaps anticipating the Court's analysis, Vinning states that "[t]his is not a mere disagreement or difference of opinion, this is a case where the Doctor provided no care at all for plaintiff" (Doc. 87, p. 9). The problem for Vinning is that his conclusory statements are not supported by any competent evidence from the sparse record before the Court.

In September 2007, when he was first transferred back to Menard, Vinning was seen by a medical technician, and then later by a nurse practitioner who ordered an x-ray and instructed him in back exercises (Doc. 85-1, p 90). Then, in October 2007, Vinning was evaluated by Dr. Magdel regarding his ongoing complaints of back pain and his request for a double mattress (*Id.*). According to his medical records, Dr. Magdel prescribed Naprosyn for four months (*Id.* at 90, 91). Five days later, Vinning saw Dr. Feinerman who discussed the results of the x-ray with him and determined that he had degenerative joint disease (*Id.* at 91). At this evaluation, Dr. Feinerman denied Vinning's request for a double mattress. The foregoing deposition testimony simply does not support Vinning's claim that Dr. Feinerman provided him with no treatment at all. To the contrary, it shows that Dr. Feinerman—or his staff—evaluated Vinning on at least a somewhat regular basis, including x-rays; and that Vinning received treatment in the form of various medications and instructions in back exercises.

So, while Vinning argues that his Complaint is not about a mere disagreement or difference of opinion, in reality, that is exactly what this case boils down to. Vinning filed this lawsuit because he was dissatisfied with Dr. Feinerman's decision not to issue him two mattresses. In his affidavit, Vinning claims that "[o]ther Doctors prescribed plaintiff with treatment that was working i.e. double mattress and double handcuff permit" (Doc. 87, p. 11). In reality, of the over 10 different doctors or nurse practicioners that Vinning saw, in at least five different IDOC facilities, only one prescribed

Vinning a double mattress and double handcuff permit, and only for six months. Vinning's claim falters because, at most, all that he has shown is that Dr. Feinerman chose a course of treatment that differed from a prior doctor. And, for purposes of demonstrating deliberate indifference, "[m]ere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). In light of the record taken as a whole, Vinning cannot show that Dr. Feinerman's chosen course of treatment "was so inadequate that it demonstrated an absence of professional judgment." *Collignon v. Milwaukee County,* 163 F.3d 982, 989 (7th Cir. 1998). In sum, there simply is no competent evidence that Dr. Feinerman knowingly or recklessly disregarded Vinning's medical condition.

It is undisputed that Dr. Feinerman's treatment of Vinning differed from his past treatment—Dr. Feinerman did not issue Vinning a double mattress because he did not think this was medically necessary. It is also clear that Vinning was upset with Dr. Feinerman's refusal to grant his request for an extra mattress. In his deposition testimony, however, Vinning admits that many inmates complained about the thin mattresses and having to sleep on steel slabs (Doc. 85-1, p. 56). Vinning then goes on to admit that regardless of his medical conditions, he" would "be in pain even if I didn't have [two mattresses] just by the sleeping quarters I'm assigned to" (Doc. 85-1, pp. 56, 57). These facts, when taken as a whole, simply come nowhere near to demonstrating that Dr. Feinerman knowingly or recklessly disregarded a substantial risk of serious harm from Vinning's arthritis or degenerative joint disease.

## **FINAL RECOMMENDATIONS**

In light of the foregoing, when accepting Vinning's version of the relevant events as true, there is no genuine issue of material fact regarding his deliberate indifference claim. Accordingly, the Court hereby **RECOMMENDS** that Defendant Dr. Adrian Feinerman's Motion for Summary

Judgment (Doc. 85) be **GRANTED,** and the Court adopt the foregoing findings of fact and conclusions of law.

It is further **RECOMMENDED** that, pursuant to the Court's May 3, 2011 Order (Doc. 89), Plaintiff Mondrea Vinning's Motion for Summary Judgment (Doc. 87) be **DENIED** because it was untimely filed and because, in substance, it is simply a Response to Dr. Feinerman's Motion for Summary Judgment.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation within **fourteen (14) days** of being served with a copy. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). Accordingly, **Objections to this Report and Recommendation must be filed on or before Wednesday, June 8, 2011.**

**IT IS SO ORDERED.**

**DATED: May 24, 2011.**

/s/ ***Stephen C. Williams***
**STEPHEN C. WILLIAMS**
**United States Magistrate Judge**